**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WHITE PLAINS HOUSING AUTHORITY

Plaintiff,

-against-

BP PRODUCTS NORTH AMERICA INC.

Defendant.

**Case Number 17-cv-6250**

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiff, the White Plains Housing Authority ("Plaintiff" or "WPHA"), by way of this Complaint against the defendant, BP Products North America Inc., ("Defendant BP Products" or "BP Products") states and alleges as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This is a civil action brought by Plaintiff pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq.; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; the New York State Navigation Law, N.Y. Nav. Law § 181(5); and state law regarding private nuisance, trespass, and negligence, seeking declaratory relief, injunctive relief, damages, declaratory relief, and attorneys' fees and costs for Defendant BP Products' contamination of Plaintiff's real property including in the vicinity of a building located at 33 Fisher Court ("Building 33"), White Plains, New York.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of Count I pursuant to

§ 7002(a) of RCRA, 42 U.S.C. § 6972(a); and federal question jurisdiction, 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over Counts II through VI under 28

U.S.C. § 1367, because the New York State Navigation Law, private nuisance, trespass, and

negligence claims are so related to the RCRA claim in this action that they form the same case

and controversy under Article III of the United States Constitution.

4.      This Court has authority to grant the declaratory relief requested pursuant to 28

U.S.C. §§ 2201-2202 and the Court's inherent power.

5.      Venue is proper in the Southern District of New York pursuant to 42 U.S.C. §

6972(a); and 28 U.S.C § 1391(b) because the actual and threatened endangerments, releases,

discharges, injuries, and damages at issue have and are continuing to take place in this district.

6.      On or about August 27, 2015, Plaintiff, in a Notice of Endangerment, provided

notice of the actual and threatened endangerments, releases, injuries, and damages alleged herein

to: (1) Defendant, (2) the Administrator of the United States Environmental Protection Agency

("EPA"); (3) the Administer of Region 2 of the EPA; (4) the Commissioner of the New York

State Department of Environmental Conservation ("NYSDEC"); (5) the New York State

Attorney General; and (6) the Attorney General of the United States. Plaintiff's Notice of

Endangerment complies with § 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), and 40

C.F.R. part 254.

7.      Plaintiff waited at least ninety (90) days after receipt of Plaintiff's Notice of

Endangerment by BP Products, and the state and federal agencies before filing this action.

## THE PARTIES

8.      Plaintiff is a municipal housing authority, existing under the laws of the State of New York.

9.      Plaintiff owns and operates a five-apartment building multifamily residential public housing complex known as Winbrook Apartments located in downtown White Plains, New York. ("WPHA's Property").

10.     The addresses of Plaintiff's five current Winbrook apartment buildings are 159 S. Lexington Avenue, 135 S. Lexington Avenue, 11 Fisher Court, 33 Fisher Court, and 225 Dr. Martin Luther King Jr. Blvd.[1]

11.     Residents have occupied the Winbrook apartment buildings from the 1950s through the present.

12.     Approximately 350 low income individuals, including children, women, and elderly people, live in Building 33.

13.     Upon information and belief, Defendant BP Products is a domestic corporation organized and existing under the laws of the State of Maryland.

14.     Upon information and belief, Defendant BP Products' predecessors include BP Oil Corporation, BP Oil Inc., and BP Exploration & Oil Inc.

15.     Defendant BP Products and its predecessors were the owners and/or operators of a gasoline service station located at 34 East Post Road, White Plains, New York (the "BP Station") from at least 1969 to 1983.

---

[1] Additionally, a new building completed in 2016 is located in the northwest corner of the complex at 301 Quarropas Street, White Plains, N.Y. ("the Prelude building").  Plaintiff asserts no claims regarding the Prelude building.

16.     WPHA's Building 33 and its parking lot are adjacent to and directly north of the BP Station.

17.     WPHA's Building 33 and its parking lot are in plain view of the BP Station.

18.     BP Oil Corporation owned the BP Station from 1969 to 1973.

19.     In 1973, BP Oil Corporation transferred the BP Station to BP Oil Inc.

20.     BP Oil Inc. owned the BP Station from 1973 to 1983.

21.     On information and belief, Defendant BP Products is a successor to BP Oil Corporation, BP Oil Inc. and BP Exploration & Oil Inc.

22.     Hereafter, all references in this Complaint to "Defendant BP Products" includes its aforesaid predecessors.

23.     On information and belief, during the period Defendant BP Products owned and operated the BP Station, gasoline and its breakdown products, including benzene, and other hazardous waste and solid waste, were released into the environment from the BP Station.

24.     On information and belief, during the period Defendant BP Products owned and operated the BP Station, lead was added by refiners to some of the gasoline which came to be located in underground storage tanks at the BP Station.

25.     On information and belief, during the time Defendant BP Products owned or operated the BP Station, lead was released and disposed of into the environment from leaking underground storage tanks at the BP Station.

26.     The gasoline and its breakdown products, including benzene, toluene and other hazardous waste and solid waste released from the BP Station during the time Defendant BP Products owned or operated the BP Station migrated and continues to migrate onto the WPHA Property from the adjacent BP Station.

4

27.    Under new ownership, the BP Station at 34 East Post Road continued to be operated under the "BP" name through and including December 2016.

## FACTS

**Contamination of the White Plains Housing Authority's Property
From the BP Station**

28.    Benzene, a breakdown product of gasoline, is classified by the EPA as a known human carcinogen.

29.    Refineries in the United States started adding lead to gasoline in the 1930s (or earlier) to boost octane levels and improve engine performance.

30.    Domestic use of leaded gasoline continued for decades, including during the time that Defendant BP Products owned or operated the BP Station until phased out by the late 1980s.

31.    Lead is a toxic metal which can cause severe mental and physical impairment, including behavioral disorders, anemia, mental retardation, and permanent nerve damage. Young children and pregnant women are the most vulnerable.

32.    The NYSDEC has set acceptable water quality standards for gasoline breakdown products, including 1 ppb for benzene, and 5 ppb for ethyl-benzene, 1,2,4-Trimethylbenzene, toluene, and xylenes. 6 NYCRR § 703.5, Table 1.

33.    Similarly, the NYSDEC has set acceptable water quality standards for lead at 25 ppb.

34.    On information and belief, in or around 1977 -1979 Defendant BP Products demolished the then existing BP Station, abandoned existing gasoline underground storage tanks ("USTs") on the property.

35.    It then constructed a new gasoline filling station at the same location and installed carbon steel gasoline USTs.

36.    Groundwater flow direction in the vicinity of the BP Station is to the north and/or northwest direction toward WPHA's Building 33 and its parking lot.

37.    Building 33 and its parking lot are immediately adjacent to and downgradient of the BP Station.

38.    In or about September, 2014, Tyree Environmental Corporation ("Tyree"), a consultant to the Getty Properties Corporation involved in remediating a separate groundwater plume located to the west of the BP Station, installed two temporary monitoring wells, MW-110 and MW-111, in the Brookfield Street sidewalk immediately adjacent to the eastern border of the BP Station (within about five feet).

39.    On or about September 19, 2014, First Environment, Inc. ("First Environment"), WPHA's environmental consultant, took split samples of the soil and groundwater at MW-110 and MW-111.

40.    The results of the sampling, first reported in or about September 29, 2014, showed that soil sample results for MW-110 included 280 ppb benzene and 79,000 ppb 1,2,4-Trimethylbenzene, exceeding NYSDEC CP-51 soil cleanup levels.

41.    The September 2014 groundwater results for MW-110 included 240 ppb benzene and 3,900 ppb 1,2,4-Trimethylbenzene, exceeding NYSDEC groundwater standards.

42.    The September 2014 groundwater results for MW-111 included 1,400 ppb benzene and 83 ppb 1,2,4-Trimethylbenzene, exceeding NYSDEC groundwater standards.

43.    In April 2015, First Environment conducted a Site Investigation / Remedial Investigation ("SI/RI") at portions of the WPHA's Property adjacent to the BP Station, installed six temporary monitoring wells, including TWB-2 and TWB-5, to the north and/or northwest of the BP Station, and sampled existing MW-106.

44.    Temporary monitoring well TWB-2 is approximately 125 feet from Building 33.

45.    Temporary monitoring well TWB-5 is approximately 90 feet from Building 33.

46.    The April 2015 soil sample results for TWB-2 included 33,000 ppb 1,2,4-Trimethylbenzene and 2,100 ppb xylenes (total).

47.    The April 2015 soil sample results for TWB-5 included 23,000 ppb 1,2,4-Trimethylbenzene and 9,700 ppb xylenes (total).

48.    The April 2015 TWB-2 and TWB-5 soil sample results exceeded NYSDEC CP-51 soil cleanup levels.

49.    The April 2015 groundwater results for TWB-2 included 30 ppb benzene, 2,600 ppb 1,2,4-Trimethylbenzene, and 3,300 ppb xylenes (total).

50.    The April 2015 groundwater results for TWB-5 included 2,900 ppb 1,2,4-Trimethylbenzene and 6,080 ppb xylenes (total).

51.    The April 2015 groundwater results for TWB-3, TWB-4, and TWB-6 exceeded the NYSDEC acceptable water quality standards, including for 1,2,4-Trimethylbenzene, 1,3,5-Trimethylbenzene, ethylbenzene, and m&p-xylenes.

52.    Also, the April 2015 groundwater results revealed lead concentrations above NYSDEC water quality standards in samples collected from TWB-3, TWB-5, TWB-6, and MW-106, with concentrations of 51 ppb, 95 ppb, 270 ppb and 39 ppb respectively.

53.    In December 2015, January 2016, and August 2016, First Environment conducted additional groundwater and soil investigations on WPHA's Property adjacent to the BP Station, which were published in a November 2016 Remedial Investigation Report ("RIR").

54.     The December 2015 groundwater sampling results for MW-201 included exceedances for 1,2,4-Trimethylbenzene (2100 ppb), 1,3,5-Trimethylbenzene (540 ppb), ethylbenzene (1000) and xylenes (total 2650 ppb).

55.      The December 2015 groundwater sampling results for MW-203 included exceedances for 1,2,4-Trimethylbenzene (1400 ppb), 1,3,5-Trimethylbenzene (320 ppb), ethylbenzene (120) and xylenes (total 380 ppb).

56.     Also, the December 2015 groundwater sampling results identified lead in wells, MW-106 and MW-201 through MW-204. The lead concentration in MW-204 exceeded NYSDEC water quality standards at 28 ppm.

57.     The August 2016 groundwater sampling results for MW-201 included exceedances for benzene (16 ppb), 1,2,4-Trimethylbenzene (1100 ppb), 1,3,5-Trimethylbenzene (430 ppb), ethylbenzene (750) and xylenes (total 1200 ppb).

58.     The August 2016 groundwater sampling results for MW-203 included exceedances for 1,2,4-Trimethylbenzene (2600 ppb), 1,3,5-Trimethylbenzene (650 ppb), ethylbenzene (270) and xylenes (total 320 ppb).

59.     The November 2016 RIR delineated the plume and confirmed that the plume had migrated from the BP Station onto WPHA's Property, moving in the direction of Building 33.

60.     First Environment's November 2016 RIR was submitted to the NYSDEC on December 16, 2016.

61.     On or about December 20, 2016, NYSDEC issued a Petroleum Spill Number for the BP Station at 34 East Post Road, NYSDEC Spill No. 16-8924.

62.     The NYSDEC Spill No. 16-8924 reported petroleum contamination affecting both soil and groundwater.

63.     Also, the NYSDEC Spill No. 16-8924 identified "significant soil and groundwater" contamination off-site.

64.     In January 2017, HydroEnvironmental Solutions Inc. ("HES"), the environmental consultant for the current owner of the BP Station, performed a Subsurface Investigation ("SI") at the BP Station.

65.     In connection with the January SI, HES installed seven test borings, three temporary monitoring wells, and collected soil and groundwater samples at the BP Station.

66.     HES observed free product during the January 18, 2017 HES sampling event.

67.     HES's SI report revealed concentrations of petroleum-related contamination at concentrations exceeding the respective NYSDEC soil cleanup levels, including ethylbenzene; isopropylbenzene; n-propylbenzene; 1,2,4-Trimethylbenzene; 1,3,5-Trimethylbenzene; and xylenes.

68.     Lead in soil was detected in the three soil borings under the BP Station property.

69.     On information and belief, the presence of lead in the soil under the BP station and in the groundwater under WPHA's adjacent property confirms that lead was discharged into the environment from the BP Station during the period that it was owned or operated by Defendant BP Products.

70.     The groundwater analytical results in the HES's SI included petroleum-related contamination at concentrations above the respective NYSDEC water quality standards for 1,2,4-Trimethylbenzene; 1,3,5-Trimethylbenzene, ethylbenzene; isopropylbenzene; n-propylbenzene and xylenes.

71.     HES's SI report concluded that significant petroleum-related impacts to the groundwater exist at the BP Station.

72.     HES's report reflected its belief that the petroleum-related impacts at the BP station are not recent in nature.

73.     Gasoline and its breakdown products, including benzene, toluene and other solid wastes and hazardous substances, released at and from the BP Station have migrated under Building 33's parking lot and other areas adjacent to Building 33.

74.     On information and belief Defendant BP Products has known or should have known of the potential migration from the BP Station of solid waste and hazardous waste beginning as far back as during the period 1977 to 1979 and has been on actual notice since 2015 when it received the RCRA endangerment notice of the migration onto WPHA's property.

75.     Defendant BP Products failed to take proper precautions to prevent the continued migration of the gasoline and its breakdown products, including benzene and other hazardous substances, released at and from the BP Station onto the WPHA's Property.

**Contamination from the BP Station has
Damaged Plaintiff**

76.     Plaintiff has begun a long-term project estimated to cost approximately $350 million to replace the five existing buildings on the WPHA's Property, including Building 33, with new, modern, energy efficient buildings without displacing from the complex any of the existing tenants.

77.     On information and belief, the presence of soil contamination and groundwater contamination from the BP Station on the WPHA's Property will materially interfere with and/or increase the cost and complexity of the financing for construction of this project in the vicinity of Building 33, and may adversely impact the financing for construction of other buildings and amenities to be constructed on the WPHA's Property.

10

78.     On information and belief, the contamination on the WPHA's Property may pose an imminent and substantial endangerment to the workers who will need to excavate contaminated soils or who will otherwise come into contact with contaminated soil and groundwater in the vicinity of Building 33.

79.     On information and belief, the contamination on the WPHA's Property if allowed to continue to migrate may pose an imminent and substantial endangerment to the persons living in Building 33.

80.     On information and belief, contamination on WPHA's Property may also pose an imminent and substantial endangerment to the environment.

81.     Plaintiff has not consented to any contamination remaining on its Property.

82.     Plaintiff has incurred and will continue to incur costs in responding to the contamination and potential risk from the contamination migrating from the BP Station onto the WPHA's Property.

83.     Plaintiff's costs have and will include costs of an environmental consulting firm conducting sampling and reviewing and evaluating previously collected data and data that will be collected in the future regarding contamination migrating onto the WPHA's Property from the BP Station; the development and implementation of the work plan(s); and other appropriate actions.

84.     Plaintiff has and will continue to incur attorneys' fees and the costs of this litigation.

85.     Financing for the construction in the vicinity of Building 33 will in significant part be dependent on approvals, grants, guarantees and/or other funding from the United States

Housing and Urban Development Agency ("HUD"), the New York State Housing Finance Agency ("HFA"), as well as from other state and local governmental agencies.

86.    HUD regulations restrict any proposed development of contaminated properties and require an environmental review for all projects involving five or more dwelling units. 24 CFR §58.5(i)(2).

87.    The Office of the Comptroller of the Currency has warned banks against lending on environmentally contaminated property and that: "Contamination may decrease the collateral's value or render the collateral worthless." U.S. Department of the Treasury, Office of the Comptroller of the Currency, Comptroller's Handbook: Commercial Real Estate Lending, August 2013.

88.    On information and belief, the combination of the contamination from the BP Station on the WPHA's Property, and limitations on the ability of the WPHA to obtain HUD approvals, financing and/or guarantees because of that contamination, may deter other state and local governmental agencies from providing financing and/or increase the cost, complexity, and burdens of such financing.

89.    Similarly, financing from banks and real estate developers may be more complex and costly because of the contamination on the WPHA's Property from the BP Station.

90.    In summary, on information and belief, the contamination migrating from the BP Station, in addition to presenting a potentially imminent and substantial endangerment to human health or the environment, may increase the cost, complexity and burdens of financing for new construction in the vicinity of what is now Building 33 and its adjacent areas to which the contamination from the BP Station has spread unless that contamination is fully remediated.

91.     Plaintiff did not cause or contribute to the contamination that has migrated from the BP Station and harmed the WPHA Property.

92.     Plaintiff seeks immediate remediation of all of the contamination migrating to its property in the vicinity of Plaintiff's Building 33 and its adjacent areas in order to eliminate the potential threats to human health and the environment and to abate the damage to its financing of replacement of its buildings as aforesaid.

93.     In addition, Plaintiff also seeks damages for the costs that Plaintiff has incurred and will incur responding to the contamination migrating from the BP Station, damages for the interference with the future financing of its replacement of Building 33 and construction of other buildings and amenities on its Property, and the cost of restoring its Property to the condition it was in prior to the contamination migrating from the BP Station.

94.     Defendant BP Products' activities involved the release and discharge of gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances, that, when released, are harmful to human health or the environment.

## CLAIMS FOR RELIEF

### Count I - RCRA 42 U.S.C. § 6972

95.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 94 of this Complaint.

96.     Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff brings this Count I, authorizes "any person" to bring a lawsuit when: (1) "solid or hazardous waste"; (2) "may present an imminent and substantial endangerment to health or the environment"; and (3) the defendant falls within one of the categories of entities that Congress made liable for taking abatement action.

97.     The persons declared liable by Congress for potential endangerments under § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) of RCRA are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the solid or hazardous waste at issue.  These entities include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

98.     Under § 1004(27) of RCRA, 42 U.S.C. § 6903(27), subject to limitations not applicable to this case, "the term 'solid waste' means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities…."

99.     Under § 1004(5) of RCRA, 42 U.S.C. § 6903(5), "the term 'hazardous waste' means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."

100.     The administrative regulations promulgated under RCRA contain additional definitions of solid and hazardous waste. 40 C.F.R. Part 261.  However, for purposes of RCRA § 7002(a)(1)(B) citizen suits, the statutory definitions of solid and hazardous waste, set forth in RCRA §§ 1004(27) and (5), apply. 40 C.F.R. § 261.1(b)(2).

101.    The substances improperly stored and released at and from the BP Station that have migrated onto the WPHA's Property meet the definitions of "solid waste" and "hazardous waste."

102.    Defendant BP Products is a person covered under § 7002(a)(1)(B) of RCRA as a generator and as an operator of a disposal facility whose acts and omissions caused and contributed to, and continue to cause and contribute to the past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

103.    Defendant BP Products has not stopped or prevented the potential endangerments and the actual and threatened injuries and damage at issue are ongoing and will persist until enjoined by this Court.

104.    Defendant BP Products is strictly liable and jointly and severally liable under § 7002(a) of RCRA for the disposal and discharge of solid and hazardous waste from the BP Station.

105.    Unless abated by order of this Court, the discharges from the BP Station complained of may present an imminent and substantial endangerment to health or the environment at or in the vicinity of Plaintiff's Building 33.

106.    On information and belief, no governmental entity has commenced and is diligently prosecuting an action under RCRA § 7002(a)(1)(B), 42 U.S.C. 9672(a)(1)(B); is actually engaging in a removal action under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") § 104, 42 U.S.C. § 9604; or has incurred costs to initiate a Remedial Investigation and Feasibility Study under CERCLA § 104, 42 U.S.C.

§ 9604 and is diligently proceeding with a remedial action under CERCLA to abate the endangerments at issue.

107.    On information and belief, contamination in both soil and groundwater remains on the BP Station property and continues to migrate onto the WPHA's Property.

108.    Plaintiff has served a copy of the Complaint on the Attorney General of the United States and on EPA.

109.    Plaintiff is entitled to injunctive relief under § 7002(a) of RCRA, 42 U.S.C. § 6972(a), requiring Defendant BP Products to take such action as may be necessary to abate the potential endangerments at issue or to pay Plaintiff the costs of doing so.

110.    Plaintiff is also entitled to an award against Defendant BP Products of the costs of this litigation, including reasonable attorney and expert witness fees, pursuant to RCRA § 7002(e), 42 U.S.C. § 6972(e).

## Count II – New York State Navigation Law § 181

111.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 110 of this Complaint.

112.    Under § 181 of the New York State Navigation Law, under which Plaintiff brings this Count II, any person who has discharged petroleum is "strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages…." N.Y. Nav. Law § 181(1).

113.    An injured person may bring a strict liability claim directly against any person who has discharged petroleum for the costs of cleanup and removal and direct and indirect damages.  N.Y. Nav. Law § 181(5).

114.    Under § 172(8) of the New York State Navigation Law, the term "'[d]ischarge' means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters, or into waters outside the jurisdiction of the state when damage may result to the lands, waters or natural resources within the jurisdiction of the state". N.Y. Nav. Law § 172(8).

115.    The "waters…within the jurisdiction of the state" include groundwater.  N.Y. Nav. Law § 172(18).

116.    The spill and release of gasoline, among other substances, at the BP Station and into the groundwater meets the definition of a "discharge".

117.    Under § 172(15) of the New York State Navigation Law, the term "'[p]etroleum' means oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene". N.Y. Nav. Law § 172(15).

118.    The spill and release of gasoline, among other substances, at the BP Station meets the definition of a spill of "petroleum" under the Navigation Law.

119.    Defendant BP Products' discharges of gasoline at the BP Station has caused gasoline and its breakdown products to migrate onto the WPHA's Property causing damage to WPHA and to its Property.

120.    Defendant BP Products is strictly liable under the New York State Navigation Law as a person who discharged petroleum at and from the BP Station causing direct and indirect damages to Plaintiff.

121.    Pursuant to § 181(5) of the New York State Navigation Law, Plaintiff is entitled to an award of cleanup and removal costs and direct and indirect damages, including attorneys' fees incurred or to be incurred by Plaintiff as a result of the discharge and migration of the contamination, plus interest.

122.    Under the Navigation Law, WPHA is also entitled to have its Property fully restored to its pre-spill condition. *AMCO International, Inc. v. Long Island Railroad Co.*, 754 N.Y.S.2d 655, 657 (N.Y. App. Div. 2003).

## Count III - Private Nuisance

123.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 122 of this Complaint.

124.    Under New York common law, under which Plaintiff brings this Count III, private nuisance "is actionable by the individual person or persons whose rights have been disturbed" when there is "an interference with the use or enjoyment of land". *Copart Industries, Inc. v. Consolidated Edison Co. of New York, Inc.*, 362 N.E.2d 968, 971 (N.Y. 1977).

125.    A defendant is liable "for a private nuisance if his conduct is a legal cause of the invasion of interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities". *Id.*

126.    Under New York law "everyone who … participates in the … maintenance …of a nuisance are [sic] liable jointly and severally" *State v. Shore Realty Corp.,* 759 2d 1032, 1053 (2d. Cir. 1985)(citations omitted).

127.    Plaintiff WPHA owns the WPHA's Property.

18

128.    Defendant BP Products' acts and omissions have interfered with Plaintiff's use and enjoyment of its Property.

129.    Defendant BP Products has acted intentionally and unreasonably and/or negligently or recklessly by failing to contain the sources of contamination and prevent the migration of gasoline and its breakdown products, including benzene and other solid waste, hazardous waste, and hazardous substances, onto the WPHA's Property.

130.    Plaintiff has suffered and will continue to suffer, damages from the private nuisance.

131.    Unless abated by order of this Court, the private nuisance will continue to cause Plaintiff irreparable injury.

132.    Unless abated by order of this Court, the private nuisance will continue to cause injury to human health and the environment in, at, around and in the vicinity of the WPHA's Property.

133.    Unless abated by order of this Court, the private nuisance will likely restrict and/or make more complex and expensive HUD approvals and make more costly bank, developer, and other funding for the redevelopment of the Building 33 area and potentially other areas of Plaintiff's property.

134.    Unless abated by order of this Court, the private nuisance has and will continue to force Plaintiff to incur costs responding to the contamination and potential risks.

### Count IV- Trespass

135.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

136.    To be liable, the trespasser "need not intend or expect the damaging consequence of his intrusion"; he need only "intend the act which amounts to or produces the unlawful invasion, and the intrusion must…be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness." *Phillips v. Sun Oil Co.*, 121 N.E. 249, 250–51 (N.Y. 1954).

137.    Defendant BP Products had good reason to know, and upon information and belief did know, that unless effectively controlled the contamination on the BP Station property would migrate onto the WPHA's Property.

138.    Under New York common law, the defendant is liable for damage to his neighbor's land if the defendant "had good reason to know or expect that subterranean and other conditions were such that there would be passage from defendants to plaintiff's land." *Id.* at 251.

139.    Upon information and belief, Defendant BP Products had good reason to know or expect that subterranean conditions were such that there would be passage from the soil and groundwater under the BP Station to Plaintiff's land in the vicinity of Building 33.

140.    Defendant BP Products' acts and omissions have caused the invasion of gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances onto the WPHA's Property.

141.    Defendant BP Products has allowed the invasion of gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances onto the WPHA's Property to continue for years without implementing remedial actions to effectively prevent the further migration of such contamination.

142.    The invasion of Defendant BP Products' gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances including onto the WPHA's

Property will likely restrict and/or make more complex HUD approvals and make more costly

bank, developer, and other funding for the redevelopment of the Building 33 area and potentially

other areas of WPHA's Property.

143.    The invasion of Defendant BP Products' gasoline and its breakdown products,

including benzene, and other solid wastes and hazardous substances onto the WPHA's Property

has forced Plaintiff to incur costs responding to the contamination and potential risk.

144.    Unless abated by order of this Court, the trespass will cause injury to human

health or the environment in, at, around and in the vicinity of the WPHA's Property.

145.    Unless abated by order of this Court, the trespass has and will continue to force

Plaintiff to incur costs of responding to the contamination and potential risk.

## Count V – Negligence

146.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

through 145 of this Complaint.

147.    Under New York common law, under which Plaintiff brings this Count V, the

elements to establish negligence are: "1) a duty on the part of the defendant; 2) a breach of that

duty by conduct involving an unreasonable risk of harm; 3) damages suffered by the plaintiff;

and 4) causation, both in fact and proximate, between the breach and the plaintiff's harm."

*McCarthy v. Olin Corp.*, 119 F.3d 148, 161 (2d Cir. 1997) (internal quotation marks and

citations omitted).

148.    A landowner who engages in activities that may cause injury to persons on

adjacent premises owes those persons a duty to take reasonable precautions to avoid injuring

them. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center Inc.*, 750 N.E.2d 1097, 1102

(N.Y. 2001).

149.    BP Products knew, or should have known, the dangerous, hazardous, and toxic nature of the chemicals used at and released at and from the BP Station that BP Products allowed to migrate and continue to migrate onto the WPHA's Property.

150.    Defendant BP Products knew, or should have known, that the gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances are capable of causing serious property damage if released and allowed to migrate.

151.    Defendant BP Products owed a duty to Plaintiff, the adjacent property owner, to prevent the spill, release and migration of the gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances onto the WPHA's Property.

152.    Defendant BP Products owed a duty to Plaintiff to take all reasonable measures necessary to protect the Plaintiff and its tenants and others, from the spill, release and migration of the gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances.

153.    Defendant BP Products breached its duty to Plaintiff by negligently causing the spill, release, discharge and continuing migration of gasoline and its breakdown products, including benzene and other solid wastes, hazardous wastes, and hazardous substances and by failing to take reasonable measures and precautions necessary to avoid and respond to the contamination and prevent the migration of contamination from the BP Station onto the WPHA's Property.

154.    BP Products' negligent acts and omissions were the cause in fact and the proximate cause of the damages and injuries to Plaintiff.

155.    Defendant BP Products has allowed the invasion of gasoline and its breakdown products, including benzene and other solid wastes, hazardous wastes onto the WPHA's Property

for years without implementing any effective remedial action to prevent the further continuing migration of such contamination.

156.    Defendant BP Products' failure to prevent the continuing migration of contamination onto the WPHA's Property was in wanton and reckless disregard of its duties to Plaintiff.

157.    By reason of its negligent wanton and reckless conduct, BP Products is liable for all of the damages and injuries to Plaintiff and for punitive damages caused by the spill, release and continuing migration of gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances onto the WPHA's Property.

## Count VI - Declaratory Judgment

158.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 157, of this Complaint.

159.    An actual and substantial controversies exist between Plaintiff and Defendant BP Products over Defendant's ongoing violation of RCRA, the New York Navigation Law and New York common law.

160.    Declaratory relief will clarify the rights and obligation of the parties and is, therefore, appropriate to resolve these controversies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court for judgment as follows:

## Count I

On Count I, Plaintiff asks this Court to:

A.    Find BP Products jointly and severally liable for taking all necessary action to investigate, abate and otherwise respond to potential endangerments associated with solid or

23

hazardous wastes and hazardous substances on the WPHA's Property that have and continue to migrate through groundwater from the BP Station onto the WPHA's Property;

B.    Enter a mandatory injunction ordering BP Products to abate the risk of endangerment to human health or the environment, or to pay to the WPHA an amount of money determined at trial to be sufficient to fund the WPHA's development and implementation of such a plan to: (1) eliminate the endangerment to human health or the environment from the continuing discharge from the BP property; and (2) restore the WPHA's Property, as expeditiously as practicable, to the condition it was in prior to the contamination migrating from the BP Station; and

C.    Order BP Products to pay jointly and severally Plaintiff's costs of litigation, including, but not limited to, reasonable attorneys' fees and expert witness fees, pursuant to 42 U.S.C. § 6972(e).

## Count II

On Count II, Plaintiff asks this Court to:

D.    Find, pursuant to § 181(5) of the New York State Navigation Law, that BP Products is jointly and severally strictly liable for all costs of cleanup and removal and direct and indirect damages, including attorneys' fees, incurred by the WPHA as a result of the discharge and migration of the contamination from the BP Station onto WPHA's Property, plus interest; and

E.    Require BP Products jointly and severally to implement an appropriate plan to abate the continuing discharge from the BP Station migrating onto the WPHA's Property, to compensate the WPHA for abatement measures required on the WPHA's Property that BP Products does not itself implement, and to fully restore the WPHA's Property, as expeditiously

as practicable, to the condition it was in prior to the contamination migrating from the BP

Station, including without limitation by the excavation and treatment of all contaminated soil and

groundwater on Plaintiff's property to fully achieve New York State water quality and

unrestricted soil cleanup standards, and the restoration of all above ground facilities and

appurtenances including the parking lot surface, walkways, shrubbery and other appurtenances

impacted by the required excavation.

## **Count III**

On Count III, Plaintiff asks this Court to:

      F.     Find that BP Products is jointly and severally liable for taking all necessary action

to investigate, abate and otherwise respond to the private nuisance arising from the BP Station

and affecting the WPHA's Property;

      G.     Award the WPHA damages or restitution as appropriate for BP Products' failure

to take all necessary actions to prevent, investigate, abate, and otherwise respond to the private

nuisance arising from the BP Station discharges; and

      H.     Require BP Products  to implement an appropriate abatement plan for actual and

threatened releases from the BP Station migrating onto the WPHA's Property, to compensate the

WPHA for abatement measures required on the WPHA's Property to the extent that Defendant

BP Products does not undertake them, and to restore the WPHA's Property, as expeditiously as

practicable, to the condition it was in prior to the contamination migrating from the BP Station

including without limitation by the safe and effective excavation and treatment of all

contaminated soil and groundwater on WPHA's property to fully achieve New York State water

quality standards and unrestricted soil cleanup standards, and the restoration of all above ground

facilities and appurtenances including the parking lot surface, walkways, shrubbery and other appurtenances impacted by the excavation of contaminated soils.

**Count IV**

On Count IV, Plaintiff asks this Court to:

     I.     Find BP Products jointly and severally liable for taking all necessary action to investigate, abate and otherwise respond to the trespass from the BP Station and affecting the WPHA's Property;

     J.     Award the WPHA damages or restitution as appropriate for BP Products' failure to take all necessary actions to prevent, investigate, abate, and otherwise respond to the trespass from the BP Station and affecting the WPHA's Property;

     K.     Award the WPHA punitive damages for the egregious damage to the WPHA's Property caused by BP Products' wanton and willful or reckless disregard for the WPHA's rights as the adjacent property owner; and

     L.     Require BP Products to implement an appropriate abatement plan for actual and threatened releases at or from the BP Station migrating onto the WPHA's Property, to compensate the WPHA for abatement measures required on the WPHA's Property to the extent that Defendant BP Products does not undertake them, and to restore the WPHA's Property, as expeditiously as practicable, to the condition it was in prior to the contamination migrating from the BP Station including without limitation by the safe and effective excavation and treatment of all contaminated soil and groundwater on WPHA's property to fully achieve New York State water quality standards and unrestricted soil cleanup standards, and the restoration of all above ground facilities and appurtenances including the parking lot surface, walkways, shrubbery and other appurtenances impacted by the excavation of contaminated soils.

## Count V

On Count V, Plaintiff asks this Court to:

M.    Find BP Products jointly and severally liable for the harm and damage to the WPHA's Property caused by BP Products' breach of its duty to take reasonable actions to prevent, investigate, abate, and otherwise respond to the contamination migrating from the BP Station and affecting the WPHA's Property;

N.    Award the WPHA damages as appropriate for the harm and damage to the WPHA's Property caused by BP Products' breach of its duty to take reasonable actions to prevent, investigate, abate, and otherwise respond to the contamination migrating from the BP Station and affecting the WPHA's Property;

O.    Award the WPHA punitive damages for Defendant BP Products WPHA's wanton, willful and reckless disregard for the WPHA's rights as the adjacent property owner; and

P.    Require BP Products' to implement an appropriate abatement plan for actual and threatened releases at or from the BP Station migrating onto the WPHA's Property, to compensate the WPHA for abatement measures required on the WPHA's Property to the extent that Defendant BP Products does not undertake them, and to restore the WPHA's Property, as expeditiously as practicable, to the condition it was in prior to the contamination migrating from the BP Station including without limitation by the safe and effective excavation and treatment of all contaminated soil and groundwater on WPHA's Property to fully achieve New York State water quality standards and unrestricted soil cleanup standards, and the restoration of all above ground facilities and appurtenances including the parking lot surface, walkways, shrubbery and other appurtenances impacted by the excavation of contaminated soils.

**Count VI**

Q.      Enter a declaratory judgement under 28 U.S.C. §§ 2201(a) and 2202 determining

that BP Products is jointly and severally liable for all future costs, damages and expenses,

including attorneys' fees, hereafter incurred or to be incurred by the WPHA as a result of the

discharge and migration of contamination onto WPHA's Property from the BP Station.

**On All Counts**

R.      Retain continuing jurisdiction of this action to the extent necessary and for as long

as necessary to enforce and interpret, and to review Defendant's compliance with, this Court's

orders;

S.      Award Plaintiff attorneys' and experts' fees and costs consistent with applicable

law; and

T.      Grant Plaintiff such other and further relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully requests that this

matter be tried by jury.

DATED this 17th day of August 2017.

Respectfully submitted,

Norman W. Bernstein, Attorney No. NB5123
Mary E. Desmond, Attorney No. MD8008
N.W. Bernstein & Associates, LLC
800 Westchester Avenue, Suite N319
Rye Brook, New York 10573
Telephone Number: (914) 358-3500
Facsimile Number: (914) 701-0707

Attorneys for Plaintiff White Plains Housing Authority

28