## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

WHITE PLAINS HOUSING AUTHORITY

Plaintiff,

-against-

BP PRODUCTS NORTH AMERICA INC. &
MARIANINA OIL CORP.

Defendants.

**FIRST AMENDED
COMPLAINT AND DEMAND
FOR JURY TRIAL**

**17-cv-06250-NSR-JCM**

Plaintiff, the White Plains Housing Authority ("Plaintiff" or "WPHA"), by way of this

Complaint against the defendants, BP Products North America Inc., ("Defendant BP Products"

or "BP Products") and Marianina Oil Corp., ("Defendant Marianina or Marianina"),

collectively "Defendants," and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action brought by Plaintiff pursuant to the Resource Conservation

and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq.; the Declaratory Judgment Act, 28

U.S.C. §§ 2201-2202; the New York State Navigation Law, N.Y. Nav. Law § 181(5); and state

law regarding private nuisance, trespass, and negligence, seeking injunctive relief, damages,

declaratory relief, and attorneys' fees and costs for Defendants' contamination of Plaintiff's real

property in the vicinity of its building located at 33 Fisher Court, White Plains, New York

("Building 33").

2.      The source of the contamination which is the subject of this action is a BP

service station located at 34 East Post Road, White Plains, NY. (the "BP Station").

1

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of Count I pursuant to

§ 7002(a) of RCRA, 42 U.S.C. § 6972(a); and federal question jurisdiction, 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over Counts II through VI under 28

U.S.C. § 1367, because the New York State Navigation Law, private nuisance, trespass, and

negligence claims are so related to the RCRA claim in this action that they form the same

case  and controversy under Article III of the United States Constitution.

5.      This Court has authority to grant the declaratory relief requested pursuant to 28

U.S.C. §§ 2201-2202, and through the Court's inherent power.

6.      Venue is proper in the Southern District of New York pursuant to 42 U.S.C. §

6972(a); and 28 U.S.C § 1391(b) because the actual and threatened endangerments, releases,

discharges, injuries, and damages at issue have and are continuing to take place in this

district.

7.      On or about April 15, 2015, Plaintiff, in a Notice of Endangerment, provided

notice of the actual and threatened endangerments, releases, injuries, and damages alleged

herein to: (1) Defendant Marianina, (2) the Administrator of the United States

Environmental Protection Agency ("EPA"); (3) the Administer of Region 2 of the EPA; (4)

the Commissioner of the New York State Department of Environmental Conservation

("NYSDEC"); (5) the New York State Attorney General; and (6) the Attorney General of the

United States.  Plaintiff's Notice of Endangerment complies with § 7002(b)(2)(A) of RCRA,

42 U.S.C. § 6972(b)(2)(A), and 40 C.F.R. part 254.

8.      Plaintiff waited at least ninety (90) days after receipt of Plaintiff's Notice of

Endangerment by Defendant Marianina, and the state and federal agencies before filing this

action against Defendant Marianina.

9.      On or about August 27, 2015, Plaintiff, in a Notice of Endangerment, provided

notice of the actual and threatened endangerments, releases, injuries, and damages alleged

herein to: (1) Defendant PB Products, (2) the Administrator of the EPA; (3) the Administer

of Region 2 of the EPA; (4) the Commissioner of the NYSDEC; (5) the New York State

Attorney General; and (6) the Attorney General of the United States. Plaintiff's Notice of

Endangerment complies with § 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), and 40

C.F.R. part 254.

10.      Plaintiff waited at least ninety (90) days after receipt of Plaintiff's Notice

of  Endangerment by BP Products, and the state and federal agencies before filing this

action against Defendant BP Products.

## THE PARTIES

11.      Plaintiff is a municipal housing authority, existing under the laws of the State

of  New York.

12.      Plaintiff owns and operates a five-apartment building multifamily

residential public housing complex known as Winbrook Apartments located in downtown

White Plains,  New York. ("WPHA's Property").

13.      The addresses of Plaintiff's five current Winbrook apartment buildings are 159

S.  Lexington Avenue, 135 S. Lexington Avenue, 11 Fisher Court, 33 Fisher Court, and 225

Dr.  Martin Luther King Jr. Boulevard.[1]

14.      Residents have occupied the Winbrook apartment buildings from the 1950s

---

[1] Additionally, a new building completed in 2016 is located in the northwest corner of the complex at 301 Quarropas Street, White Plains, N.Y. ("the Prelude building"). Plaintiff asserts no claims regarding the Prelude building.

through the present.

15.     Approximately 350 low income individuals, including children, women, and elderly people, live in Building 33.

16.     Upon information and belief, Defendant BP Products is a domestic corporation organized and existing under the laws of the State of Maryland.

17.     Upon information and belief, Defendant BP Products' predecessors include BP Oil Corporation, BP Oil Inc., and BP Exploration & Oil Inc.

18.     WPHA's Building 33 and its parking lot are adjacent to and directly north /northwest of the BP Station.

19.     WPHA's Building 33 and its parking lot are in plain view of the BP Station.

20.     BP Oil Corporation owned the BP Station from 1969 to 1973.

21.     In 1973, BP Oil Corporation transferred the BP Station to BP Oil Inc.

22.     BP Oil Inc. owned the BP Station from 1973 to 1983.

23.     Defendant BP Products is a successor to BP Oil Corporation, BP Oil Inc. and BP Exploration & Oil Inc.

24.     Hereafter, all references in this Complaint to "Defendant BP Products" or to "Defendants" includes Defendant BP Products' aforesaid predecessors.

25.     Defendant Marianina is a domestic corporation organized and existing under the laws of the State of New York.

26.     Defendant Marianina is, and has been since in or about 1987, the owner and/or operator of the BP Station.

27.     On information and belief, during the period Defendants owned and/or operated the BP Station, gasoline and its breakdown products, including benzene, ethyl-benzene, and

other hazardous waste and solid waste, were released into the environment from the BP Station.

28.     On information and belief, during the period Defendant BP Products owned and/or operated the BP Station, lead was added by refiners to some of the gasoline which came to be located in underground storage tanks at the BP Station.

29.     On information and belief, during the time Defendant BP Products owned and/or operated the BP Station, lead was released and disposed of into the environment from leaking underground storage tanks at the BP Station.

30.     The gasoline and its breakdown products, including benzene, ethyl-benzene and other hazardous waste and solid waste, released from the BP Station into the environment during the time Defendants owned and/or operated the BP Station migrated and continues to migrate onto the WPHA  Property in the vicinity of Building 33 from the adjacent BP Station.

31.     On information and belief, during the Defendants' ownership and/or operation of the BP Station at 34 East Post Road it was and continued to be operated under the "BP" name and other names through and including December 2016.

## FACTS

### Contamination of the White Plains Housing Authority's Property in the Vicinity of Building 33 and Adjacent Areas From the BP Station

32.     Benzene, a breakdown product of gasoline, is classified by the EPA as a known  human carcinogen.

33.     Refineries in the United States started adding lead to gasoline in the 1930s (or  earlier) to boost octane levels and improve engine performance.

34.     Domestic use of leaded gasoline continued for decades, including during the time that Defendant BP Products owned or operated the BP Station until phased out by the late

1980s.

35.     Lead is a toxic metal which can cause severe mental and physical impairment, including behavioral disorders, anemia, mental retardation, and permanent nerve damage. Young children and pregnant women are the most vulnerable.

36.     The NYSDEC has set acceptable water quality standards for gasoline breakdown products, including 1 ppb for benzene, and 5 ppb for ethyl-benzene, 1,2,4-Trimethylbenzene, toluene, and xylenes. 6 NYCRR § 703.5, Table 1.

37.     Similarly, the NYSDEC has set acceptable water quality standards for lead at 25 ppb.

38.     On information and belief, in or around 1977 - 1979 Defendant BP Products demolished the then existing BP Station, and abandoned existing gasoline underground storage tanks ("USTs") on the property.

39.     It then constructed a new gasoline filling station at the same location and installed steel gasoline USTs.

40.     Groundwater flow direction in the vicinity of the BP Station is to the north and/or northwest direction toward WPHA's Building 33 and its parking lot.

41.     Building 33 and its parking lot are immediately adjacent to and downgradient of the BP Station.

42.     In or about September 2014, Tyree Environmental Corporation ("Tyree"), a consultant to the Getty Properties Corporation installed two temporary monitoring wells, MW-110 and MW-111, in the Brookfield Street sidewalk immediately adjacent to the east side of the BP Station (within about five feet).

43.     On or about September 19, 2014, First Environment, Inc. ("First

Environment"), WPHA's environmental consultant, took split samples of the soil and groundwater at MW-110 and MW-111.

44.     The results of the sampling, first reported in or about September 29, 2014, showed  that soil sample results for MW-110 included 280 ppb benzene and 79,000 ppb 1,2,4-Trimethylbenzene, exceeding NYSDEC CP-51 soil cleanup levels.

45.     The September 2014 groundwater results for MW-110 included 240 ppb benzene  and 3,900 ppb 1,2,4-Trimethylbenzene, exceeding NYSDEC groundwater standards.

46.     The September 2014 groundwater results for MW-111 included 1,400 ppb benzene and 83 ppb 1,2,4-Trimethylbenzene, exceeding NYSDEC groundwater standards.

47.     In April 2015, First Environment conducted a Site Investigation/Remedial Investigation ("SI/RI") at portions of the WPHA's Property adjacent to the BP Station, installed six temporary monitoring wells, including TWB-1 through TWB-6, to the north and/or northwest of the BP Station, and sampled existing MW-106.

48.     Temporary monitoring well TWB-2 is approximately 125 feet from Building 33.

49.     Temporary monitoring well TWB-5 is approximately 90 feet from Building 33.

50.     The April 2015 soil sample results for TWB-2 included 33,000 ppb 1,2,4-Trimethylbenzene and 2,100 ppb xylenes (total).

51.     The April 2015 soil sample results for TWB-5 included 23,000 ppb 1,2,4-Trimethylbenzene and 9,700 ppb xylenes (total).

52.     The April 2015 TWB-2 and TWB-5 soil sample results exceeded NYSDEC CP-51 soil cleanup levels.

53.     The April 2015 groundwater results for TWB-2 included 30 ppb benzene, 2,600  ppb 1,2,4-Trimethylbenzene, and 3,300 ppb xylenes (total), exceeding NYSDEC

acceptable water quality standards.

54.     The April 2015 groundwater results for TWB-5 included 2,900 ppb 1,2,4-Trimethylbenzene and 6,080 ppb xylenes (total) exceeding NYSDEC acceptable water quality standards.

55.     The April 2015 groundwater results for TWB-3, TWB-4, and TWB-6 also exceeded the NYSDEC acceptable water quality standards, including for 1,2,4-Trimethylbenzene, 1,3,5-Trimethylbenzene, ethylbenzene, and m&p-xylenes.

56.     The April 2015 groundwater results showed lead concentrations above NYSDEC water quality standards in samples collected from TWB-3, TWB-5, TWB-6, and MW-106, with concentrations of 51 ppb, 95 ppb, 270 ppb and 39 ppb respectively.

57.     In December 2015, January 2016, and August 2016, First Environment conducted  additional groundwater and soil investigations on portions of WPHA's Property in the vicinity of Building 33 and adjacent to the BP Station, which were published in a November 2016 Remedial Investigation Report ("RIR").

58.     The December 2015 groundwater sampling results for MW-201 included exceedances for 1,2,4-Trimethylbenzene (2100 ppb), 1,3,5-Trimethylbenzene (540 ppb), ethylbenzene (1000) and xylenes (total 2650 ppb).

59.      The December 2015 groundwater sampling results in the RIR for MW-203 included exceedances for 1,2,4-Trimethylbenzene (1400 ppb), 1,3,5-Trimethylbenzene (320 ppb), ethylbenzene (120) and xylenes (total 380 ppb).

60.     Also, the December 2015 groundwater sampling results identified lead in wells MW-106 and MW-201 through MW-204. The lead concentration in MW-204 exceeded NYSDEC water quality standards at 28 ppm.

61.     The August 2016 groundwater sampling results for MW-201 included exceedances for benzene (16 ppb), 1,2,4-Trimethylbenzene (1100 ppb), 1,3,5-Trimethylbenzene (430 ppb), ethylbenzene (750) and xylenes (total 1200 ppb).

62.     The August 2016 groundwater sampling results for MW-203 included exceedances for 1,2,4-Trimethylbenzene (2600 ppb), 1,3,5-Trimethylbenzene (650 ppb), ethylbenzene (270) and xylenes (total 320 ppb).

63.     The November 2016 RIR delineated the plume and confirmed that the plume had migrated from the BP Station onto WPHA's Property, moving in the direction of Building 33.

64.     First Environment's November 2016 RIR was submitted to the NYSDEC on December 16, 2016.

65.     On or about December 20, 2016, NYSDEC issued a Petroleum Spill Number for the BP Station at 34 East Post Road, NYSDEC Spill No. 16-8924.

66.     The NYSDEC Spill No. 16-8924 reported petroleum contamination affecting both soil and groundwater.

67.     Also, the NYSDEC Spill No. 16-8924 identified "significant soil and groundwater" contamination off-site.

68.     In January 2017, HydroEnvironmental Solutions Inc. ("HES"), the environmental consultant for the current owner of the BP Station, performed a Subsurface Investigation ("SI") at the BP Station.

69.     In connection with the January SI, HES installed seven test borings, three temporary monitoring wells, and collected soil and groundwater samples at the BP Station.

70.     HES observed free product during the January 18, 2017 HES sampling event.

71.     HES's SI report revealed concentrations of petroleum-related contamination at concentrations exceeding the respective NYSDEC soil cleanup levels, including ethylbenzene; isopropylbenzene; n-propylbenzene; 1,2,4-Trimethylbenzene; 1,3,5-Trimethylbenzene; and xylenes.

72.     Lead in soil was detected in the three soil borings under the BP Station property.

73.     On information and belief, the presence of lead in the soil under the BP station and in the groundwater under WPHA's property in the vicinity of Building 33 confirms that leaded gasoline was discharged into the environment from the BP Station during the period that it was owned and/or operated by Defendant BP Products and has migrated onto WPHA's Property.

74.     The groundwater analytical results in the HES's SI included petroleum-related contamination at concentrations above the respective NYSDEC water quality standards for 1,2,4-Trimethylbenzene; 1,3,5-Trimethylbenzene, ethylbenzene; isopropylbenzene; n-propylbenzene and xylenes.

75.     HES's SI report concluded that significant petroleum-related impacts to the groundwater exist at the BP Station.

76.     HES's report reflected its belief that at least some of the petroleum-related impacts at the BP Station are not recent in nature.

77.     Gasoline and its breakdown products, including benzene, ethylbenzene and other solid and hazardous wastes, released at and from the BP Station have migrated under Building 33's parking lot and other areas adjacent to Building 33.

78.     On information and belief Defendant BP Products has known or should have

known of the potential migration from the BP Station of solid or hazardous waste, including

gasoline and its breakdown by-products beginning as far back as during the period 1977 to

1979 and has been on actual notice since 2015  when it received the RCRA endangerment

notice of the migration onto WPHA's Property.

79.     Defendant BP Products failed to take proper precautions to prevent the

continued  migration of the gasoline and its breakdown by-products, including benzene, 1,2,4-

Trimethylbenzene, 1,3,5-Trimethylbenzene, xylenes and other hazardous substances, released

at and from the BP Station onto the WPHA's Property.

80.     On information and belief Defendant Marianina has known or should have

known of the potential migration from the BP Station of solid or hazardous waste, including

gasoline and it breakdown by-products, including benzene, 1,2,4-Trimethylbenzene, 1,3,5-

Trimethylbenzene, xylenes and other hazardous substances, beginning as far back as during

the period 1994 to the present, and has been on actual notice since 2015 when it received the

RCRA endangerment notice of the migration onto WPHA's Property.

81.     Defendant Marianina failed to take proper precautions to prevent the continued

migration of the gasoline and its breakdown products, including benzene, 1,2,4-

Trimethylbenzene, 1,3,5-Trimethylbenzene, xylenes and other hazardous substances released

at and from the BP Station onto the WPHA's Property.

**Contamination from the BP Station has
Damaged Plaintiff**

82.     Plaintiff has begun a long-term project estimated to cost approximately $350

million to replace the five existing buildings on the WPHA's Property, including Building

33, with new, modern, energy efficient buildings without displacing from the complex any

of the  existing tenants.

11

83.     On information and belief, the presence of soil contamination and groundwater contamination from the BP Station on the WPHA's Property in the vicinity of Building 33 and its adjacent areas will materially interfere with and/or increase the cost and complexity of the financing for construction and may adversely impact the financing for construction of other buildings and  amenities to be constructed on the WPHA's Property.

84.     On information and belief, the contamination from the BP Station on the WPHA's Property in the vicinity of Building 33 and its adjacent areas may pose an imminent and substantial endangerment to the workers who will need to excavate contaminated soils or who will otherwise come into contact with contaminated soil and groundwater in the vicinity of Building 33.

85.     On information and belief, the contamination from the BP Station on the WPHA's Property in the vicinity of Building 33 and its adjacent areas if allowed to continue to migrate may pose an imminent and substantial endangerment to the health of persons living in Building 33.

86.     On information and belief, contamination from the BP Station on WPHA's Property in the vicinity of Building 33 and its adjacent areas may also pose an imminent and substantial endangerment to the environment.

87.     Plaintiff has not consented to any contamination entering or remaining on its Property.

88.     Plaintiff has incurred and will continue to incur costs in responding to the contamination and potential risk from the contamination migrating from the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

89.     Plaintiff's costs have and will include costs of an environmental consulting firm

conducting sampling and reviewing and evaluating previously collected data and data that will be collected in the future regarding contamination migrating onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas from the BP Station; the development and implementation of the work plan(s); and other appropriate actions.

90.     Plaintiff has and will continue to incur attorneys' fees and the costs of this litigation.

91.     Financing for the construction in the vicinity of Building 33 will in significant part be dependent on approvals, grants, guarantees and/or other funding from the United States Housing and Urban Development Agency ("HUD"), the New York State Housing Finance Agency ("HFA"), as well as from other state and local governmental agencies.

92.     HUD regulations restrict any proposed development of contaminated properties and require an environmental review for all projects involving five or more dwelling units. 24 CFR §58.5(i)(2).

93.     The Office of the Comptroller of the Currency has warned banks against lending on environmentally contaminated property and that: "Contamination may decrease the collateral's value or render the collateral worthless." U.S. Department of the Treasury, Office of the Comptroller of the Currency, Comptroller's Handbook: Commercial Real Estate Lending, August 2013.

94.     On information and belief, the combination of the contamination from the BP Station on the WPHA's Property in the vicinity of Building 33 and its adjacent areas, and limitations on the ability of the WPHA to obtain HUD approvals, financing and/or guarantees because of that contamination, may deter other state and local governmental agencies from providing financing and/or increase the cost, complexity, and burdens of such financing.

95.     Similarly, financing from banks and real estate developers may be more complex and costly because of the contamination from the BP Station on the WPHA's Property in the vicinity of Building 33 and its adjacent areas from the BP Station.

96.     In summary, on information and belief, the contamination migrating from the BP Station, in addition to presenting a potentially imminent and substantial endangerment to health or the environment, may increase the cost, complexity and burdens of financing for new construction in the vicinity of what is now Building 33 and its adjacent areas to which the contamination from the BP Station has and is spreading unless that contamination is fully remediated.

97.     Plaintiff did not cause or contribute to the contamination that has migrated from the BP Station and harmed the WPHA Property in the vicinity of Building 33 and its adjacent areas.

98.     Plaintiff seeks immediate remediation of all of the contamination from the BP Station that has migrated and continues to migrate onto its property in the vicinity of Plaintiff's Building 33 and its adjacent areas in order to eliminate the potential threats to health or the environment and to abate the damage to its financing for replacement of its buildings as aforesaid.

99.     In addition, Plaintiff also seeks damages for the costs that Plaintiff has incurred and will incur responding to the contamination migrating from the BP Station, damages for the interference with the future financing of its replacement of Building 33 and construction of other buildings and amenities on its Property, and the cost of restoring its Property in the vicinity of Building 33 and its adjacent areas to the condition it was in prior to the contamination migrating from the BP Station.

## CLAIMS FOR RELIEF

### Count I - RCRA 42 U.S.C. § 6972

100.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 99 of this Complaint.

101.     Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff brings this Count I, authorizes "any person" to bring a lawsuit when: (1) "solid or hazardous waste"; (2) "may present an imminent and substantial endangerment to health or the environment"; and (3) the defendant falls within one of the categories of entities that Congress made liable for taking abatement action.

102.     The persons declared liable by Congress for potential endangerments under § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) of RCRA are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the solid or hazardous waste at issue. These entities include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

103.     Under § 1004(27) of RCRA, 42 U.S.C. § 6903(27), subject to limitations not applicable to this case, "the term 'solid waste' means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities...."

104.     Under § 1004(5) of RCRA, 42 U.S.C. § 6903(5), "the term 'hazardous waste' means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or

15

significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial potential hazard to health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."

105.    The administrative regulations promulgated under RCRA contain additional definitions of solid and hazardous waste. 40 C.F.R. Part 261.  However, for purposes of RCRA § 7002(a)(1)(B) citizen suits, the statutory definitions of solid and hazardous waste, set forth in  RCRA §§ 1004(27) and (5), apply. 40 C.F.R. § 261.1(b)(2).

106.    The substances improperly stored, and released at and from the BP Station that  have migrated onto the WPHA's Property meet the definitions of "solid waste" and "hazardous waste."

107.    Defendants are persons covered under § 7002(a)(1)(B) of RCRA as generators and as operators of a disposal facility whose acts and omissions caused and contributed to, and continue to cause and contribute to the past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

108.    Defendants have not stopped or prevented the potential endangerments and the actual and threatened injuries and damage at issue are ongoing and will persist until enjoined by this Court.

109.    Defendants are strictly liable and jointly and severally liable under § 7002(a) of RCRA for the disposal and discharge of solid and hazardous waste from the BP Station.

110.    Unless abated by order of this Court, the discharges from the BP Station

complained of may present an imminent and substantial endangerment to health or the environment at or in the vicinity of Plaintiff's Building 33.

111.    On information and belief, no governmental entity has commenced and is diligently prosecuting an action under RCRA § 7002(a)(1)(B), 42 U.S.C. 9672(a)(1)(B); is actually engaging in a removal action under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") § 104, 42 U.S.C. § 9604; or has incurred  costs to initiate a Remedial Investigation and Feasibility Study under CERCLA § 104, 42 U.S.C. § 9604 and is diligently proceeding with a remedial action under CERCLA to abate the  endangerments at issue.

112.    On information and belief, contamination in both soil and groundwater remains on the BP Station property and continues to migrate from the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

113.    Plaintiff has served a copy of this First Amended Complaint on the Attorney General of the United States and on EPA.

114.    Plaintiff is entitled to injunctive relief under § 7002(a) of RCRA, 42 U.S.C. § 6972(a), requiring Defendants to take such action as may be necessary to abate the potential endangerments at issue or to pay Plaintiff the costs of doing so.

115.    Plaintiff is also entitled to an award against Defendants of the costs of this litigation, including reasonable attorney and expert witness fees, pursuant to RCRA § 7002(e), 42 U.S.C. § 6972(e).

## Count II – New York State Navigation Law § 181

116.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 115 of this Complaint.

117.     Under § 181 of the New York State Navigation Law, under which Plaintiff brings this Count II, any person who has discharged petroleum is "strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages...." N.Y. Nav. Law § 181(1).

118.     An injured person may bring a strict liability claim directly against any person who has discharged petroleum for the costs of cleanup and removal and direct and indirect damages. N.Y. Nav. Law § 181(5).

119.     Under § 172(8) of the New York State Navigation Law, the term "'[d]ischarge' means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters, or into waters outside the jurisdiction of the state when damage may result to the lands, waters or natural resources within the jurisdiction of the state". N.Y. Nav. Law § 172(8).

120.     The "waters…within the jurisdiction of the state" include groundwater. N.Y. Nav. Law § 172(18).

121.     The spill and release of gasoline, among other substances, at the BP Station and into the groundwater meets the definition of a "discharge".

122.     Under § 172(15) of the New York State Navigation Law, the term "'[p]etroleum' means oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene". N.Y. Nav. Law § 172(15).

123.     The spill and release of gasoline, among other substances, at the BP Station meets the definition of a spill of "petroleum" under the New York State Navigation Law.

124.    Defendants' discharges of gasoline at and from the BP Station have caused gasoline and its breakdown products to migrate onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas causing damage to WPHA and to its Property.

125.    Defendants are strictly liable under the New York State Navigation Law as persons who discharged petroleum at and from the BP Station causing direct and indirect damages to Plaintiff. Pursuant to § 181(5) of the New York State Navigation Law, Plaintiff is entitled to an award of cleanup and removal costs and direct and indirect damages, including attorneys' fees incurred or to be incurred by Plaintiff as a result of the discharge and migration of the contamination, plus interest.

126.    Under the Navigation Law, WPHA is also entitled to have its Property fully restored to its pre-spill condition. *AMCO International, Inc. v. Long Island Railroad Co.*, 754 N.Y.S.2d 655, 657 (N.Y. App. Div. 2003).

## Count III - Private Nuisance

127.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 126 of this Complaint.

128.    Under New York common law, under which Plaintiff brings this Count III, private nuisance "is actionable by the individual person or persons whose rights have been disturbed" when there is "an interference with the use or enjoyment of land". *Copart Industries, Inc. v. Consolidated Edison Co. of New York, Inc.*, 362 N.E.2d 968, 971 (N.Y. 1977).

129.    A defendant is liable "for a private nuisance if his conduct is a legal cause of the invasion of interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules

governing liability for abnormally dangerous conditions or activities". *Id.*

130.    Under New York law "everyone who ... participates in the ... maintenance ...of a nuisance are [sic] liable jointly and severally" *State v. Shore Realty Corp.,* 759 2d 1032, 1053 (2d. Cir. 1985)(citations omitted).

131.    Plaintiff WPHA owns the WPHA's Property.

132.    Defendants' acts and omissions have interfered with Plaintiff's use and enjoyment of its Property.

133.    Defendants have acted intentionally and unreasonably and/or negligently or recklessly by failing to contain the sources of contamination and prevent the migration of gasoline and its breakdown products, including benzene and other solid waste, hazardous waste, and hazardous substances, from the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

134.    Plaintiff has suffered and will continue to suffer, damages from the private nuisance.

135.    Unless abated by order of this Court, the private nuisance will continue to cause Plaintiff irreparable injury.

136.    Unless abated by order of this Court, the private nuisance will continue to cause injury to health and the environment in, at, around and in the vicinity of Building 33 and its adjacent areas.

137.    Unless abated by order of this Court, the private nuisance will likely restrict and/or make more complex and expensive HUD approvals and make more costly bank, developer, and other funding for the redevelopment of the Building 33 area and adjacent areas of Plaintiff's property.

138.    Unless abated by order of this Court, the private nuisance has and will continue to force Plaintiff to incur costs responding to the contamination and potential risks.

### Count IV- Trespass

139.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 138 of this Complaint.

140.    To be liable, the trespasser "need not intend or expect the damaging consequence of his intrusion"; he need only "intend the act which amounts to or produces the unlawful invasion, and the intrusion must…be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness." *Phillips v. Sun Oil Co.*, 121 N.E. 249, 250–51 (N.Y. 1954).

141.    Defendants had good reason to know, and upon information and belief did know, that unless effectively controlled the contamination on the BP Station property would migrate onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

142.    Under New York common law, the defendant is liable for damage to his neighbor's land if the defendant "had good reason to know or expect that subterranean and other conditions were such that there would be passage from defendants to plaintiff's land." *Id.* at 251.

143.    Upon information and belief, Defendants had good reason to know or expect that subterranean conditions were such that there would be passage from the soil and groundwater under the BP Station to WPHA Property in the vicinity of Building 33 and its adjacent areas.

144.    Defendants' acts and omissions have caused the invasion of gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances from

the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

145.     Defendants have allowed the invasion of gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas to continue for years without implementing remedial actions to effectively prevent the further migration of such contamination.

146.     The invasion of Defendants' gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances including onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas will likely restrict and/or make more complex HUD approvals and make more costly bank, developer, and other funding for the redevelopment of the Building 33 area and potentially other areas of WPHA's Property.

147.     The invasion of Defendants' gasoline and its breakdown products, including benzene, and other solid wastes and hazardous substances onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas has forced Plaintiff to incur costs responding to the contamination and potential risk.

148.     Unless abated by order of this Court, the trespass will cause injury to health or the environment in, at, around and in the vicinity of Building 33 and its adjacent areas

149.     Unless abated by order of this Court, the trespass has and will continue to force Plaintiff to incur costs of responding to the contamination and potential risk.

### Count V – Negligence

150.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 149 of this Complaint.

151.     Under New York common law, under which Plaintiff brings this Count V, the elements to establish negligence are: "1) a duty on the part of the defendant; 2) a breach of that duty by conduct involving an unreasonable risk of harm; 3) damages suffered by the plaintiff; and 4) causation, both in fact and proximate, between the breach and the plaintiff's harm." *McCarthy v. Olin Corp.*, 119 F.3d 148, 161 (2d Cir. 1997) (internal quotation marks and citations omitted).

152.     A landowner who engages in activities that may cause injury to persons on adjacent premises owes those persons a duty to take reasonable precautions to avoid injuring them. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center Inc.*, 750 N.E.2d 1097, 1102 (N.Y. 2001).

153.     Defendants knew, or should have known, the dangerous, hazardous, and toxic nature of the chemicals used at and released at and from the BP Station and allowed them to migrate and continue to migrate onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

154.     Defendants knew, or should have known, that the gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances are capable of causing serious property damage if released and allowed to migrate.

155.     Defendants owed a duty to Plaintiff, the adjacent property owner, to prevent the spill, release and migration of the gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances at and from the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

156.     Defendants owed a duty to Plaintiff to take all reasonable measures necessary to protect the Plaintiff and its tenants and others, from the spill, release and migration of the

gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances.

157.    Defendants breached their duty to Plaintiff by negligently causing the spill, release, discharge and continuing migration of gasoline and its breakdown products, including benzene and other solid wastes, hazardous wastes, and hazardous substances and by failing to take reasonable measures and precautions necessary to avoid and respond to the contamination and prevent the migration of contamination from the BP Station onto the WPHA's  Property in the vicinity of Building 33 and its adjacent areas.

158.    Defendants' negligent acts and omissions were the cause in fact and the  proximate cause of the damages and injuries to Plaintiff.

159.    Defendants allowed the invasion of gasoline and its breakdown  products, including benzene and other solid wastes and hazardous substances onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas for years without implementing any effective remedial action to prevent the further continuing migration of such contamination.

160.    Defendants' failure to prevent the continuing migration of contamination onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas was in wanton and reckless disregard of their duties to Plaintiff.

161.    By reason of their negligent wanton and reckless conduct, Defendants are liable for all of the damages and injuries to Plaintiff and for punitive damages caused by the spill, release and continuing migration of gasoline and its breakdown products, including benzene and other solid wastes and hazardous substances at and from the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas.

### Count VI - Declaratory Judgment

162.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 161, of this Complaint.

163.    An actual and substantial controversies exist between Plaintiff and Defendants over Defendants' ongoing violation of RCRA, the New York Navigation Law and New York common law.

164.    Declaratory relief will clarify the rights and obligation of the parties and is, therefore, appropriate to resolve these controversies.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court for judgment as follows:

### Count I

On Count I, Plaintiff asks this Court to:

A.    Find Defendants jointly and severally liable for taking all necessary action to investigate, abate and otherwise respond to potential endangerments associated with solid or hazardous wastes and hazardous substances on the WPHA's Property that have and continue to migrate through groundwater from the BP Station onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas;

B.    Enter a mandatory injunction ordering Defendants to abate the risk of endangerment to health or the environment, to: (1) eliminate the endangerment to health or the environment from the continuing discharge from the BP Station; and (2) restore the WPHA's Property in the vicinity of Building 33 and its adjacent areas, as expeditiously as practicable, to the condition it was in prior to the contamination migrating from the BP Station; and

C.    Order Defendants to pay jointly and severally Plaintiff's costs of litigation for

contamination sourced from the BP Station, including, but not limited to, reasonable attorneys' fees and expert witness fees, pursuant to 42 U.S.C. § 6972(e).

## Count II

On Count II, Plaintiff asks this Court to:

      D.      Find, pursuant to § 181(5) of the New York State Navigation Law, that Defendants are jointly and severally strictly liable for all costs of cleanup and removal and direct and  indirect damages, including attorneys' fees, incurred by the WPHA as a result of the discharge  and migration of the contamination from the BP Station onto WPHA's Property in the vicinity of Building 33 and its adjacent areas, plus interest; and

      E.      Require Defendants jointly and severally to implement an appropriate plan to abate the continuing discharge from the BP Station migrating onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas, to compensate the WPHA for abatement measures required on the WPHA's Property in the vicinity of Building 33 and its adjacent areas that Defendants themselves do not implement, and to fully restore the WPHA's Property, as expeditiously as practicable, to the condition it was in prior to the contamination migrating from the BP Station, including without limitation by the excavation and treatment of all contaminated soil and groundwater on Plaintiff's property in the vicinity of Building 33 and its adjacent areas to fully achieve New York State water quality and unrestricted soil cleanup standards, and the restoration of all above ground facilities and appurtenances including the parking lot surface, walkways, shrubbery and other appurtenances impacted by the required excavation.

## Count III

On Count III, Plaintiff asks this Court to:

      F.     Find that Defendants are jointly and severally liable for taking all necessary action to investigate, abate and otherwise respond to the private nuisance arising from the BP Station and affecting the WPHA's Property in the vicinity of Building 33 and its adjacent areas;

      G.     Award the WPHA damages or restitution as appropriate for Defendants' failure to take all necessary actions to prevent, investigate, abate, and otherwise respond to the private nuisance arising from the BP Station discharges; and

      H.     Require Defendants to implement an appropriate abatement plan for actual and threatened releases from the BP Station migrating onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas, to compensate the WPHA for abatement measures required on the WPHA's Property to the extent that Defendants do not undertake them, and to restore the WPHA's Property, as expeditiously as practicable, to the condition it was in prior to the contamination migrating from the BP Station including without limitation by the safe and effective excavation and treatment of all contaminated soil and groundwater on WPHA's property in the vicinity of Building 33 and its adjacent areas to fully achieve New York State water quality standards and unrestricted soil cleanup standards, and the restoration of all above ground facilities and appurtenances including the parking lot surface, walkways, shrubbery and other appurtenances impacted by the excavation of contaminated soils.

## Count IV

On Count IV, Plaintiff asks this Court to:

      I.     Find Defendants jointly and severally liable for taking all necessary action to

27

investigate, abate and otherwise respond to the trespass from the BP Station and affecting the

WPHA's Property in the vicinity of Building 33 and its adjacent areas;

     J.     Award the WPHA damages or restitution as appropriate for Defendants' failure

to take all necessary actions to prevent, investigate, abate, and otherwise respond to the trespass

from the BP Station and affecting the WPHA's Property in the vicinity of Building 33 and its

adjacent areas;

     K.     Award the WPHA punitive damages for the egregious damage to the WPHA's

Property caused by Defendants' wanton and willful or reckless disregard for the WPHA's rights

as the adjacent property owner; and

     L.     Require Defendants to implement an appropriate abatement plan for actual and

threatened releases at or from the BP Station migrating onto the WPHA's Property in the

vicinity of Building 33 and its adjacent areas, to  compensate the WPHA for abatement

measures required on the WPHA's Property to the extent  that Defendant BP Products does

not undertake them, and to restore the WPHA's Property, as  expeditiously as practicable, to

the condition it was in prior to the contamination migrating from  the BP Station including

without limitation by the safe and effective excavation and treatment of  all contaminated soil

and groundwater on WPHA's property in the vicinity of Building 33 and its adjacent areas to

fully achieve New York State  water quality standards and unrestricted soil cleanup standards,

and the restoration of all above ground facilities and appurtenances including the parking lot

surface, walkways, shrubbery and other appurtenances impacted by the excavation of

contaminated soils.

## Count V

On Count V, Plaintiff asks this Court to:

28

M.      Find Defendants jointly and severally liable for the harm and damage to the WPHA's Property caused by Defendants' breach of its duty to take reasonable actions to prevent, investigate, abate, and otherwise respond to the contamination migrating from the BP Station and affecting the WPHA's Property in the vicinity of Building 33 and its adjacent areas;

N.      Award the WPHA damages as appropriate for the harm and damage to the WPHA's Property caused by Defendants' breaches of their duty to take reasonable actions to prevent, investigate, abate, and otherwise respond to the contamination migrating from the BP Station and affecting the WPHA's Property in the vicinity of Building 33 and its adjacent areas;

O.      Award the WPHA punitive damages for Defendants' wanton, willful and reckless disregard for the WPHA's rights as the adjacent property owner; and

P.      Require Defendants to implement an appropriate abatement plan for actual and threatened releases at or from the BP Station migrating onto the WPHA's Property in the vicinity of Building 33 and its adjacent areas, to  compensate the WPHA for abatement measures required on the WPHA's Property to the extent  that Defendants do not undertake them, and to restore the WPHA's Property, as  expeditiously as practicable, to the condition it was in prior to the contamination migrating from  the BP Station including without limitation by the safe and effective excavation and treatment of  all contaminated soil and groundwater on WPHA's Property in the vicinity of Building 33 and its adjacent areas to fully achieve New York State  water quality standards and unrestricted soil cleanup standards, and the restoration of all above ground facilities and appurtenances including the parking lot surface, walkways shrubbery and other appurtenances impacted by the excavation of contaminated soils.

### Count VI

On Count VI, Plaintiff asks this Court to:

Q.      Enter a declaratory judgement under 28 U.S.C. §§ 2201(a) and 2202

determining that Defendants are jointly and severally liable for all future costs, damages and

expenses, including attorneys' fees, hereafter incurred or to be incurred by the WPHA as a

result of the  discharge and migration of contamination onto WPHA's Property in the vicinity

of Building 33 and its adjacent areas from the BP Station.

### On All Counts

R.      Retain continuing jurisdiction of this action to the extent necessary and for as

long as necessary to enforce, interpret, and review Defendants' compliance with this Court's

orders;

S.      Award to the Plaintiff attorneys' and experts' fees and costs consistent with

applicable law; and

T.      Grant Plaintiff such other and further relief as the Court deems just and proper.

### REQUEST FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully requests that

this  matter be tried by jury.

DATED this _13th_ day of November 2017.

Respectfully submitted,

Norman W. Bernstein, Attorney No. NB5123
Mary E. Desmond, Attorney No. MD8008
N.W. Bernstein & Associates, LLC 800 Westchester
Avenue, Suite N319 Rye Brook, New York 10573
Telephone Number: (914) 358-3500
*Attorneys for Plaintiff White Plains Housing Authority*

30