UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
WHITE PLAINS HOUSING AUTHORITY

                Plaintiff,

  -against-

                              17-cv-6250-NSR-JCM

BP PRODUCTS NORTH AMERICA, INC.,
MARIANINA OIL CORP., and ATLANTIC
RICHFIELD COMPANY

                Defendants.
----------------------------------------x

## DEFENDANT MARIANINA'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS MOTION TO STAY OR DISMISS THE CASE



Attorneys for Defendant Marianina Oil Corp.
81 Main Street, Suite 415
White Plains, New York 10601
(914) 682-7800

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

REPLY PRELIMINARY STATEMENT ................................................................................. 1

REPLY ARGUMENT ................................................................................................................ 2

POINT I: NYS DEC SHOULD BE ENTRUSTED TO OVERSEE THIS CLEANUP .................. 2

POINT II: PLAINTIFF OFFERS NO LAW SUPPORTING THIS COURT RETAINING
JURISDICTION ......................................................................................................................... 8

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Case**                                                     **Page**

Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. #1,
16 F. Supp. 3d 294 (S.D.N.Y. 2014) ............................................................................ 12

Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC,
794 F. Supp. 2d 602, 74 Env't. Rep. Cas. (BNA) 1294 (D. Md. 2011) ................. 9 fn., 12

City of Newburgh v. Sarna,
690 F. Supp. 2d 136 (S.D.N.Y. 2010),
aff'd in part, appeal dismissed in part, 406 F. App'x 557 (2nd Cir. 2011) ..................... 10

Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.,
989 F.2d 1305 (2nd Cir. 1993) ........................................................................................ 9

Conn. Fund for Env't v. Contract Plating Co.,
631 F.Supp. 1291 (D.Conn.1986) .................................................................................. 12

Hudson Riverkeeper Fund Inc. v. Harbor at Hastings Associates,
917 F.Supp. 251 (S.D.N.Y. 1996) ............................................................................. 9 fn.

New York Communities for Change v. New York City Dep't of Educ.,
No. 11 CV 3494 SJ, 2012 WL 78079555
(E.D.N.Y. Aug. 29, 2012), report and recommendation adopted, No.
11CV3494 SJ CLP, 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013) ........................ 9 fn., 11

Orange Env't Inc. v. County of Orange,
860 F.Supp. 1003 (S.D.N.Y. 1994) ............................................................................ 9, 12

Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty., MD,
523 F.3d 453 (4th Cir. 2008) ......................................................................................... 11

Stratford Holding LLC v. Foot Locker Retail, Inc.,
No. CIV-12-0772-HE, 2013 WL 5550461 (W.D. Okla. Oct. 8, 2013) .................... 9 fn., 11

Suffolk v. Long Island Lighting Co,
907 F.2d 1295 (2nd Cir. 1990) ........................................................................................ 9

White Plains Housing Auth. v. Getty Prop. Corp.,
No. 13-cv-6282 (NSR), 2014 WL 7183991 (S.D.N.Y. Dec. 16, 2014) ..................... 10, 11

**Statutes and Other Authorities**

| | |
|---|---|
| 6 N.Y.C.R.R. 375-1.6(a) | 5 |
| 6 N.Y.C.R.R. 375-1.6(a)(1)-(3) | 5 |
| 6 N.Y.C.R.R. 375-1.6(a)(4) | 2 fn. |
| 6 N.Y.C.R.R. 375-1.8(a)(3) | 4 |
| 6 N.Y.C.R.R. 375-1.8(a)(6) | 2 fn., 4 |
| 6 N.Y.C.R.R. 375-1.8(a)(7) | 4 |
| 6 NYCRR 375-1.8(c) | 3 |
| 6 N.Y.C.R.R. 375-1.8(d) | 3 |
| 6 N.Y.C.R.R. 375-1.8(d)(1)(iii) | 4 |
| RCRA § 7002(a)(1)(A) | 9 |
| 11 U.S.C § 101 | 7 |

## REPLY PRELIMINARY STATEMENT

Plaintiff's opposition does not dispute the fundamental facts that should guide this Court to defer authority for overseeing cleanup of the Spill to the DEC.[1] For example: Plaintiff does not dispute that the DEC is the statutorily designated State agency tasked with enforcement of New York environmental regulation and gasoline spill remediation. Nor does Plaintiff dispute that the DEC's Consent Order will bind the remediation of both its and Marianina's property. This Court should dismiss, or at least stay, this private civil litigation seeking the same cleanup objectives already required by the DEC's Consent Order, and allow that Order to control.

Instead, Plaintiff, without cause or basis, questions the DEC's aptitude and ability to enforce New York State's statutory cleanup objectives. Plaintiff offers no examples where the DEC has ever failed in this way before. Quite the contrary, the DEC routinely oversees remediation of thousands of gas stations and other impacted properties every year, just like this one. WPHA argues that this Court should retain jurisdiction, and not defer to the DEC, because "the NYSDEC is made up of people trying to do the best they can with limited resources," and asserts that WPHA's counsel "know[s] from experience" that the DEC's "available personnel" will constrain its ability to enforce its own Consent Decree."[2] WPHA offers no basis for these aspersions. They are nothing more than an effort to keep this nearly decade-old private civil case alive by making conclusory allegations to conjure uncertainty with the DEC's tried and tested enforcement and remediation rules and regulations. The fact is the DEC's Enforcement Proceeding and Consent Order case took a long time to resolve, but this case has persisted even longer, with still no result. This case generated years of legal fees, dozens of depositions and

---

[1] All capitalized terms have the same meaning as set forth in Marianina's Opening Brief.

[2] See Plaintiff's Memorandum in Opposition to Defendant's Cross Motion to Stay or Dismiss this Action and Reply to Defendant's Opposition to Plaintiff's Motion to Exclude ("Plaintiff's Opp. Br") 2-3.

1

thousands of pages of document discovery and expert reports, all in the name of ballooning costs and sapping funds that would otherwise be available for cleanup. The case is now moot as a matter of law. The DEC is fully engaged and statutorily committed to ensuring this cleanup occurs, and has obtained a legally binding Consent Order toward this end, including, contrary to Plaintiff's unsubstantiated assertions, DEC's commitment by law to carry out and fund any cleanup whereby there may be insufficient funds.

Given these developments, the most assured way to guarantee the Spill will be remediated is to let the DEC carry out its Consent Order, and its responsibilities under New York Law. The interests of both the environment and judicial economy are aligned, and should not be upset based upon the contrived arguments here of Plaintiff.

## REPLY ARGUMENT

## POINT I.

## NYS DEC SHOULD BE ENTRUSTED TO OVERSEE THIS CLEANUP

Each of Plaintiff's efforts to call into doubt the DEC's authority, ability, and the terms its Consent Order, respectfully, must fail.

First, instead of citations to case law or statutory authority, Plaintiff employs polemics to cast aspersions against the DEC. WPHA claims that the DEC's oversight of this cleanup would constitute a "fantasy world." Plaintiff's Opp. Br. at 2. Yet overseeing a remediation of these Sites is precisely what the DEC does and is statutorily mandated to do.[3] Each year, the DEC enters Consent Orders and RAWPs for thousands of gas stations and other impacted sites throughout the State of New York just like the one here, and carries them out via

---

[3] See generally 6 N.Y.C.R.R. 375-1.8(a)(6) (A "Remedial Program" will include "oversight by the Department"); 6 N.Y.C.R.R. 375-1.6(a)(4) ("The Department shall be notified at least 7 days in advance of, and be allowed to attend, any field activities to be conducted under a Department approved work plan").

2

its oversight and enforcement authority.[4] Plaintiff's counsel never explains how undermining the DEC's role in this remediation, and instead having the Court take the lead, could be a more effective way to clean the Spill. The DEC, its personnel, and their commitment to its mission have always adequately carried out gas station remediations like this one for decades – and they are statutorily directed to do so.

Second, Plaintiff asserts that the DEC's Spills Program "focuses on soil not groundwater." Plaintiff's Opp. Br. at 5, 7-10. Plaintiff further asserts that the Spills Program adheres to different standards than Plaintiff could attain by seeking a RCRA injunction. Id. Plaintiff is simply wrong on both accounts, and cites nothing for said assertions. In fact, Plaintiff is proved wrong on the very first page of CP-51, the Cleanup Guidance the DEC required Marianina to meet. CP-51 states:

> This document is used in conjunction with the applicable statutes, regulations and guidance. Site-specific soil cleanup levels, determined in accordance with this guidance, are only applied after:
>
> • the site, or area of concern, is fully investigated to determine the nature and extent of contamination;
>
> • all sources of contamination are addressed consistent with the hierarchy provided in 6 NYCRR 375-1.8(c) or **consistent with the RCRA Corrective Action Program** (as appropriate);
>
> • **groundwater, if contaminated, has been evaluated for appropriate remedial actions** consistent with 6 NYCRR 375-1.8(d) or consistent with the **RCRA Corrective Action Program** (as appropriate); and
>
> • impacts on adjacent residential properties, surface water, aquatic ecological resources are evaluated, as well as indoor air, soil vapor, vapor intrusion and other appropriate media.

Lefkowitz Decl. Ex. I at 1.

---

[4] See https://www.dec.ny.gov/chemical/8428.html (indicating that every year the DEC receives roughly 14,400 reports of petroleum product releases).

Indeed, the statute under which DEC operates states: "the remedial program at a site shall analyze the impact of contamination at a site on the following environmental criteria: (i) soil; (ii) groundwater . . . ." 6 N.Y.C.R.R. 375-1.8(a)(6); see also 6 N.Y.C.R.R. 375-1.8(a)(3) ("All remedial programs shall address bulk storage tanks or containment vessels, **source removal and control and groundwater protection** and control measures") (emphasis added). The statute further states that "[a]ll remedies shall, to the extent feasible, prevent the further migration of groundwater plumes, whether on-site or off-site" 6 N.Y.C.R.R. 375-1.8(d)(1)(iii). There is simply no basis for Plaintiff to assert that the DEC would fail to protect soil, groundwater, and all media both on and off site (both the Marianina Site and WPHA Site), which may represent a threat to the health or safety of the WPHA residents or surrounding public.

Third, contrary to Plaintiff's implication, it is not the case that Marianina's expert drafted the RAWP and the DEC rubber stamped it without scrutiny. Plaintiff knows this is untrue. We produced to Plaintiff almost 5,000 pages in discovery comprising our emails with the DEC, all involving work on the RAWP and exhibiting the substantial redlines, comments, and revisions back and forth. Moreover, the same statute governing the DEC's actions here requires that all remediation must be "be conducted pursuant to a Department-approved work plan." 6 N.Y.C.R.R. 375-1.8(a)(7). As all Respondents to DEC enforcement proceedings are encouraged to do, Marianina took the initiative in drafting and submitting a proposed RAWP. The Agency then reviews it, gives comments and revisions, and after several rounds back-and-forth, the DEC adopts an order formalizing the RAWP. The State wants applicants to be proactive in addressing their cleanup responsibilities, and indeed, the law requires this procedure:

> Work plans and reports.
>
> a) Work plans. All work undertaken as part of a remedial program for a site shall be detailed in a work plan, unless determined

otherwise by the Department.

> (1) All work plans shall:
> (i) be prepared and implemented in accordance with the requirements of all applicable laws, rules and regulations; and
> (ii) consider applicable Department guidance.
>
> **(2) A proposed work plan shall be submitted for Department review and approval**, as set forth in subdivision (d) below, and shall include, at a minimum, a schedule for performance of anticipated activities with sufficient detail to allow the Department to evaluate that work plan

6 N.Y.C.R.R. 375-1.6(a)(1)-(3) (emphasis supplied). "Subdivision (d)" goes on to state:

> (d) Review of work plans and reports.
>
> (1) The Department shall approve, modify, or reject a proposed work plan or report submitted pursuant to an order, agreement or State assistance contract.
>
> (2) Approval. Upon the Department's written approval of a work plan or report, such work plan or report shall:
> (i) be incorporated into and become an enforceable part of any order, agreement or State assistance contract pertaining to the site's remedial program;

6 N.Y.C.R.R. 375-1.6(a) (emphasis added).

That is precisely what happened here, and Plaintiff knows it. Both we and Plaintiff had extensive email communications with the DEC as the DEC was evaluating what remedial measures it would require; the RAWP underwent significant, repeated revision. See Lefkowitz Decl. Ex. K & L. The DEC – Attorney Deborah Gorman, Spills Technician Brian Weeks, and Regional Spill Engineer Dan Bendell, and their teams – scrutinized the applicant's proposed RAWP, and directed multiple changes, even after the Consent Order was already signed (indeed, that final revision dictated that the cleanup would take place according to CP-51 standard, not commercial standards, whether or not the garage gets built). See Lefkowitz Decl.

5

Ex. K.[5] As stated in our Opening Brief, the DEC's RAWP and Consent Order direct that Marianina's (or its successor's) excavation and remediation will occur to a depth and breadth so as to meet this statutory DEC Guideline CP-51, which, as Marianina's Opening Brief shows, is equal to what Plaintiff has demanded in this litigation. See Marianina's Opening Brief at 20.

WPHA's fourth assertion suggests that the Consent Order would not sufficiently bind a successor to Marianina, arguing that "the consent order . . . says nothing about what happens if a third party buys the property and does not do the work." Plaintiff's Opp. Br. at 3. Yet the Consent Order unequivocally states that it "shall be deemed to bind Respondent's successors and assigns." Lefkowitz Decl. Ex. B at 8-9. It further states that, if Marianina (or its successor or assigns) fails to remediate the spill, and the DEC employs its Spill Compensation Fund to complete the cleanup, the DEC may "recover such claims plus applicable fines and/or penalties from Respondent or any of its successors or assigns." Lefkowitz Decl. Ex. B at 3. If there were any doubt about this, Marianina's Purchase and Sale Agreement with White Plains Hospital states that the Hospital is aware of the RAWP and Consent Order and acknowledges it will be bound by them. Lefkowitz Decl. Ex. D at 2; see also Lefkowitz Reply Decl.[6] Ex. M (The Hospital provided an affidavit confirming its responsibility under the Purchase and Sale Agreement that upon buying the Marianina Site it will take responsibility for the remediation both on and off site, including the WPHA Site). Further, the DEC has been actively involved in Marianina's bankruptcy, providing comments and revisions to the proposed Sale Order, to ensure its Consent Order and RAWP are protected after the bankruptcy sale and will remain in full force

---

[5] Though Plaintiff seems to imply that the DEC's discretion might result in it accepting a less-than-acceptable cleanup, there is simply no basis for this assertion other than counsel's say-so. If this Court has any doubts, it should call in DEC representatives for a hearing to confirm the DEC's commitment to remediating these Sites.

[6] "Lefkowitz Reply Decl." means the Reply Declaration of Lee J. Lefkowitz filed concurrently with this brief.

6

and effect after the Hospital buys the property – and will bind the Hospital. The proposed Sale Order provided to the Bankruptcy Court states: "Notwithstanding the foregoing, nothing in this Order releases, nullifies or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner, lessor, lessee or operator of the Property after the date of entry of this Order."[7]

Fifth and finally, Plaintiff questions whether there will be enough money for the cleanup if the DEC – rather than this Court – is the oversight authority. Plaintiff's Opp. Br. at 3. In fact, the DEC and its Consent Order offer the most assured way for this remediation to be paid. Marianina is a single-asset corporation; the only way for it to generate funds to execute the RAWP is to sell the Marianina Site. The Hospital has agreed to both buy the site and undertake the cleanup. Lefkowitz Decl. Ex. D at 2. Both sides have agreed to escrow $1.25 million from the sale to cover the cleanup.[8] Id. Beyond that, the Hospital has even agreed to fund any

---

[7] In re Marianina Oil Corp., No. 20-23070 (RDD), ECF Doc. No. 63 at 5. The Order goes on:
> Nothing in this Order shall render the sale of the Property to be free and clear of the State of New York's role, interest and/or future interests or claims for (i) any environmental liability to a governmental unit that is not a "Claim" as defined in 11 U.S.C § 101(5); (ii) any environmental Claim of a governmental unit; (iii) any environmental liability to a governmental unit on the part of any entity as the owner or operator of the Property after the Sale date; (iv) any matters related to any license, permit, registration, governmental authorization, administrative decision or any consent order involving the State of New York and the Debtor and its affiliates; or (v) any liability to a governmental unit on the part of any entity other than the Debtor, including the Purchaser, any other potential purchasers or non-debtor operators. Nothing in the Order limits, reduces, releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of any property.

Id. at 8.

[8] The parties anticipate that the remaining $350,000 will go to court costs, legal fees, and the DEC's monetary penalty in connection with its Enforcement Proceeding. Unfortunately these administrative costs in bankruptcy continue to mount as Plaintiff pursues its unnecessary litigation.

7

exceedance should the remediation cost that much (though no one, including Plaintiff expects it will). Id.; see also Lefkowitz Reply Decl. Ex. M (The Hospital provided an affidavit confirming its responsibility under the Purchase and Sale Agreement to execute the remediation and fund it, including any exceedance). And should even *that* fail, the DEC would step in under the Consent Order and utilize its Spills Cleanup Fund. Lefkowitz Decl. Ex. B at 3. Nevertheless, inexplicably, Plaintiff suggests that its litigation offers a better way, though Plaintiff never explains how. Plaintiffs' Opp. Br. at 3. Plaintiff even brought an Order to Show Cause, seeking to enjoin the sale to the Hospital. We are at a loss for why Plaintiff has taken this tack. If Plaintiff gets its way and the sale is stymied, not only would the parties lose the Hospital as a responsible, motivated party to execute this cleanup and remediate the Sites, but the parties would lose the liquidation of Marianina's sole asset and the funding that comes with it.

In sum, every document from the beginning to end of this process of selling the Marianina Site to generate funds to execute the DEC's Consent Order and remediate these Sites protects the health and safety of the environment. The RAWP, the Consent Order, the Purchase and Sale Agreement, and the Bankruptcy Sale Order all make clear the same thing: Marianina, or the Hospital, or as a final backstop, the DEC itself, will execute and fund this cleanup to the same levels and requirements WPHA is calling for in this litigation. This Court should decline to assent to WPHA's attempts to prolong this case. This Court should comfortably defer to the DEC and permit the DEC to guide this remediation and bring this years'-long dispute to a close.

### POINT II.

### PLAINTIFF OFFERS NO LAW SUPPORTING THIS COURT RETAINING JURISDICTION

Our Opening Brief offered numerous cases, from around the country (including the Supreme Court, and including here in New York and in this District), supporting the premise

that when the DEC has commenced an Enforcement Proceeding – and specifically when the DEC has entered into a Consent Order – the law dictates that the court stay or dismiss a private citizen's suit and defer to the DEC's authority to oversee and enforce the cleanup. Plaintiff fails to refute or distinguish those cases.

Plaintiff argues that the examples we provided of case law supporting deferral to state regulators and dismissal of private litigation involved the Clean Water Act. See Plaintiff's Opp. Br. at 5-6. Yet several others cited by Marianina equally concern RCRA cases like this one.[9] And in any event, the Second Circuit has noted that the "Supreme Court acknowledged that the language in the citizen suit provisions of the Clean Water Act and § 7002(a)(1)(A) of RCRA is identical." Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1315 (2nd Cir. 1993).

Second, Plaintiff cites just one authority Suffolk v. Long Island Lighting Co, 907 F.2d 1295 (2nd Cir. 1990), which is neither a Clean Water Act case, nor a RCRA case, nor even an environmental case. In it, the defendant argued that the State Public Service Commission had primary jurisdiction enforce RICO, and thus should preclude a private RICO lawsuit. Id. at 1310. Suffolk declined to extend the doctrine of primary jurisdiction so far. The text of RICO contains no preclusion on citizens suits when facing a duplicative state regulatory proceeding the way RCRA and CWA do. Id. We are aware of no case that has ever held that RICO claims could be preempted by primary jurisdiction of any state agency. That stands in stark contrast to RCRA. Many cases, both before and after Suffolk (including in this Circuit), have utilized primary

---

[9] See, e.g., Hudson Riverkeeper Fund Inc. v. Harbor at Hastings Associates, 917 F.Supp. 251, 256 (S.D.N.Y. 1996); see also New York Communities for Change v. New York City Dep't of Educ., No. 11 CV 3494 SJ, 2012 WL 7807955, at *5 (E.D.N.Y. Aug. 29, 2012), report and recommendation adopted, No. 11CV3494 SJ CLP, 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013); Stratford Holding LLC v. Foot Locker Retail, Inc., No. CIV-12-0772-HE, 2013 WL 5550461, at *5–6 (W.D. Okla. Oct. 8, 2013); Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC, 794 F. Supp. 2d 602, 74 Env't. Rep. Cas. (BNA) 1294 (D. Md. 2011).

9

jurisdiction to preclude private RCRA and CWA claims when the state environmental agency has diligently pursued a regulatory proceeding resulting in a Consent Order. Orange Env't Inc. v. County of Orange, 860 F.Supp. 1003, 1006-1017 (S.D.N.Y. 1994) (holding that plaintiff's citizen suit for civil penalties was barred because of NYSDEC's "administrative action concerning the situation alleged in the complaint," and noting that "the DEC's actions and enforcement decisions are entitled to a good degree of deference"); City of Newburgh v. Sarna, 690 F. Supp. 2d 136, 155 (S.D.N.Y. 2010), aff'd in part, appeal dismissed in part, 406 F. App'x 557 (2nd Cir. 2011) (same).

Plaintiff offers one more citation, and it is to a decision from this Court in this case's previous docket number, White Plains Housing Auth. v. Getty Prop. Corp., No. 13-cv-6282 (NSR), 2014 WL 7183991 (S.D.N.Y. Dec. 16, 2014). This Court will remember that decision, and how it differs from this one. That motion concerned a different spill on a neighboring site owned by Getty. In that matter, Defendant Getty moved to dismiss WPHA's private RCRA lawsuit *even though the DEC had not yet prosecuted an Enforcement Proceeding*. Instead, Getty offered an affidavit, which this court rejected, attesting to Getty having had "substantial dialogue" in "letter and email correspondence" with the DEC concerning cleanup objectives. 2014 WL 7183991 at *1. This Court noted: "The Getty Defendants argue that the Court should take judicial notice of the information in the Hatcher Affidavit and the exhibits, *analogizing these materials* to an administrative agency 'consent decree mandating investigation and remediation of hazardous waste site.'" 2014 WL 7183991 at *2 (emphasis added).[10] That is

---

10  Plaintiff appears to attempt to twist the word "action." See Plaintiff's Opp. Br. at 4. Informal "actions" by the DEC, like emails and letters, as took place in Getty, are inadequate to moot a private litigation because they were not in the context of a formal Enforcement Action. Here, there is a formal, filed Enforcement Action/Proceeding that resolved in a Consent Order, which was critically absent in Getty, which is why Getty was not moot, but this case is.

the opposite of this situation. Here, the Court need not "analogize" anything. The DEC has already commenced a proceeding, brought it to conclusion, and issued a Consent Order.[11]

In Getty this Court went on: "The materials submitted are not formal, filed pleadings or routine regulatory filings. They are, rather, an assortment of discovery materials reflecting environmental remediation efforts and related correspondence with a state agency." Id. at *2.

Indeed, in opposing Getty's motion, this same Plaintiff argued that this Court should not dismiss for the reason that "there is no agency consent decree among the materials submitted." Id. In its Getty Brief, WPHA successfully argued to this Court that this Court had to retain jurisdiction because "there is no Consent Decree mandating anything in this case." White Plains Housing Authority v. Getty Properties Corp., 2014 WL 2177674 (S.D.N.Y.). That missing piece in Getty is not missing here. Getty was moving for a dismissal without a Consent Order. Here, the DEC has completed that step. Indeed, case law dictates that as long as a DEC enforcement action ends in a Consent Order, guaranteeing a cleanup of the site and monetary protection by the Spills Fund, a RCRA Citizens Suit seeking a duplicative cleanup injunction must be dismissed. New York Communities for Change v. New York City Dep't of Educ., No. 11 CV 3494 SJ, 2012 WL 7807955, at *6 (E.D.N.Y. Aug. 29, 2012), report and recommendation adopted, No. 11CV3494 SJ CLP, 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013) ("[C]ourts have held that when the agency has entered into a consent decree with a violator, courts 'must be particularly deferential to the agency's expertise'.") (quoting Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty., MD, 523 F.3d 453, 459 (4th Cir. 2008). See e.g., Stratford Holding

---

[11] That matter also involved monetary damages, which are necessarily outside the scope of any DEC action, and thus the private litigation would not be completely duplicated by any DEC enforcement. Here, there is no claim of monetary damages. This case is only about whether this Court should issue a (duplicative) cleanup injunction.

LLC v. Foot Locker Retail, Inc., No. CIV-12-0772-HE, 2013 WL 5550461, at *5–6 (W.D. Okla. Oct. 8, 2013) (primary jurisdiction precludes a private RCRA injunction action where a consent order is issued); Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC, 794 F. Supp. 2d 602, 74 Env't. Rep. Cas. (BNA) 1294 (D. Md. 2011) (enforcement agency consent order barred private RCRA suit).

Finally, Plaintiff calls into question the DEC's "diligence" and the adequacy of the result of its Enforcement Proceeding. Plaintiff complains that it took the DEC six years to conclude its proceeding with the Consent Order, arguing that this was unacceptable delay, but meanwhile Plaintiff's own case, this case, has dragged on for **nine** years and counting.

Many courts, including the Southern District of New York, have acknowledged that the question of "diligence" is one concerning whether the DEC was "wilfull[y] blind" or acted in "bad faith," and without such extreme "dilatory" or "collusive" behavior, the DEC's methodical prosecution of an Enforcement Proceeding to conclusion with a Consent Order will preempt a private civil lawsuit like this one:

> The standard for evaluating the state's diligence is "a low one," and "requires due deference to the state's plan of attack." Orange Env't, 860 F.Supp. at 1017 (citizen suit precluded where polluter's "recalcitrant and cavalier" attitude, not state's willful blindness, derailed enforcement efforts) .... "[t]he court must presume the diligence of the State's prosecution of a defendant absent persuasive evidence that the State has engaged in a pattern of conduct in its prosecution ... that could be considered dilatory, collusive or otherwise in bad faith." Conn. Fund for Env't v. Contract Plating Co., 631 F.Supp. 1291, 1293 (D.Conn.1986).

Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. #1, 16 F. Supp. 3d 294, 321–22 (S.D.N.Y. 2014).

This Court should adhere to this doctrine, allow the DEC to do its job, and ultimately defer to the DEC's primary jurisdiction.

12

## CONCLUSION

Defendant respectfully requests that this Court dismiss, or at a minimum stay, this private litigation and permit the DEC to exercise its statutory mandate to carry out its Consent Order and remediate the Sites.

Dated: April 29, 2022
       White Plains, New York

                              Respectfully submitted,

                              ZARIN & STEINMETZ

                              Michael D. Zarin, Esq.
                              Lee J. Lefkowitz, Esq.
                              *Attorneys for the Defendant Marianina Oil Corp.*
                              81 Main Street, Suite 415
                              White Plains, New York 10601
                              (914) 682-7800

To:    Norman W. Bernstein, Esq.
        *Counsel for Plaintiff*
        *White Plains Housing Authority*
        N.W. BERNSTEIN & ASSOC. LLC
        800 Westchester Ave., Suite N319
        Rye Brook, New York 10573
        (914) 358-3500
        nwbernstein@nwbllc.com